HORNBLOWER & WEEKS–HEMPHILL,
NOYES, Plaintiff,

v.

Roy M. BURCHFIELD, Defendant.

No. 72 Civ. 4346.

United States District Court,
S. D. New York.

Nov. 29, 1973.

Lipkin, Gusrae & Held, New York City, for plaintiff; Joel Held, New York City, Lawrence Entel, Brooklyn, N. Y., of counsel.

London, Buttenwieser & Chalif, New York City, for defendant.

LASKER, District Judge.

In the action underlying this motion, plaintiff, a registered broker-dealer, seeks damages from a customer for claimed violations of the securities laws resulting from defendant's alleged failure to deliver certain securities to plaintiff following plaintiff's execution of a sale transaction in his account.

Defendant asserts three counterclaims for losses suffered as a result of plaintiff's alleged violations of the applicable statutes and rules governing the extension of credit in securities transactions. Plaintiff has moved to dismiss the counterclaims on the grounds that defendant has failed to state a claim upon which relief can be granted and that the counterclaims are barred by the Statute of Limitations, and by laches and estoppel.

### I.

The three counterclaims are similar in form. Each lists one or more securities sales transactions executed by plaintiff for defendant's account, including the date of sale, the name and quantity of the security sold, defendant's purchase and sale price, and the dollar amount of defendant's loss on the transaction. Each counterclaim also alleges certain acts of plaintiff, or failures to act, in connection with these transactions in violation of Regulation T of the Federal Reserve Board, 12 C.F.R. § 220, § 7(c) of the Exchange Act (extension of credit by broker-dealers), 15 U.S.C. § 78g(c), § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) (antifraud), and §

17(a) of the Securities Act of 1933 (antifraud), 15 U.S.C. § 77q(a).

The first counterclaim lists 39 sales of securities to defendant and alleges that "in each instance Plaintiff failed promptly to cancel or otherwise liquidate the transaction although it knew that full cash payment for the securities was not made within 7 days after the sale," as required by 12 C.F.R. § 220.4(c)(2) and § 7(c) of the Exchange Act. (Paragraphs 12 and 13, Answer). The second counterclaim lists five transactions and alleges that plaintiff "knew at the time of each sale that funds sufficient for that purpose were not in defendant's account with plaintiff and that securities had been purchased in that account during the preceding 90 days but had not been paid for in full, and had been sold," in violation of § 7(c) and 12 C.F.R. § 220.4(c)(8). (Paragraphs 14 and 15, Answer). The third counterclaim specifies one transaction and alleges that "Plaintiff failed promptly to cancel or otherwise liquidate the transaction although Plaintiff knew that sufficient cash or securities to satisfy the margin requirement with respect to said securities was not deposited into Defendant's account before the expiration of 5 days after the sale," in violation of § 7(c) and 12 C.F.R. § 220.3(b)(1), (Paragraphs 16 and 17, Answer).

■ Plaintiff contends that the counterclaims must be dismissed because defendant nowhere alleges that his account with plaintiff was a cash account, so that the necessary link with the alleged violation of the provisions of Regulation T cited in these claims is absent. Plaintiff's claim is without merit, since first, the cited regulations are specifically referable to cash accounts and second, plaintiff's moving affidavit contains as its Exhibit C a copy of defendant's monthly statement of account with plaintiff, which indicates that defendant's account was a cash account.

Plaintiff also contends that Regulation T applies only to "initial margin requirements," citing Golob v. Nauman Vandervoort, Inc., 353 F.Supp. 1264 (N.D.Ohio 1972) and that consequently the regulation does not proscribe the conduct complained of in the counterclaims. *Golob* is inapplicable since the court there specifically referred to the provision of Regulation T relating to maintenance margin in *margin* accounts, 12 C.F.R. § 220.7(b). Cash accounts, of course, may not be margined at all under Regulation T, and, as already noted, defendant's account was a cash account.

Though defendant has sufficiently pleaded a factual basis for his claims under § 7(c) and Regulation T, Pearlstein v. Scudder & German, 295 F.Supp. 1197 (S.D.N.Y.1968), rev'd in part and aff'd in part, 429 F.2d 1136 (2d Cir. 1970), cert. denied, 401 U.S. 1013, 91 S. Ct. 1250, 28 L.Ed.2d 550 (1971); Bowman v. Hartig, 334 F.Supp. 1323 (S.D. N.Y.1971), that is not the end of the matter since, as appears below, the counterclaims are barred by the applicable statute of limitations unless they adequately allege that plaintiff's claimed violations of Regulation T constitute fraud within the meaning of the securities laws.

■ Even accepting defendant's allegations as true in the light most favorable to his claim, as we are required to do, they amount to the simple contention that plaintiff failed promptly to cancel or otherwise liquidate certain transactions for defendant's account when full cash payment for the securities was not timely made, or that the requisite cash balance was lacking. The counterclaims do not allege any facts tending to establish scienter, intent to defraud, reckless disregard of truth, or knowing use of a device, scheme or artifice to defraud. In the absence of such allegations, defendant's claims under § 10(b) and § 17(a) must be dismissed for insufficiency. Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444–445 (2d Cir. 1971); Globus v. Law Research Service, Inc., 418 F.2d 1276, 1290–1291 (2d Cir. 1969).

## II.

We turn now to the question whether defendant's counterclaims, sans their § 10(b) and § 17(a) allegations, are time-barred by the Statute of Limitations. Since the provisions of the Exchange Act on which defendant bases his claims do not contain a limitations provision, state law must provide the applicable limitations period, Klein v. Bower, 421 F.2d 338, 342–343 (2d Cir. 1970); Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951). The law of the forum state controls, including a borrowing statute, if any. Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 179 F.Supp. 163 (S.D.N.Y.1959). See generally, 2 Moore's Federal Practice, ¶ 3.07 [2].

It appears from defendant's affidavit that he is a non-resident of New York, that he dealt only with the Providence, Rhode Island branch office of plaintiff and that he did not direct any communications from Rhode Island to plaintiff in New York. Since his claims thus accrued outside of New York, and since he is a non-resident of New York, the applicable limitations period is governed by N.Y.C.P.L.R. § 202, the borrowing statute. Under § 202, defendant's claim cannot be prosecuted in New York if it is time-barred by either Rhode Island law or New York law.

Since the proscription of excessive credit in securities sales originates in federal law and has no exact counterpart in state law, we are required to apply the limitations period of the state cause of action most analogous to the federal claim. International Union, United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704–706, 86 S. Ct. 1107, 16 L.Ed.2d 192 (1966); Weinberger v. New York Stock Exchange, 335 F.Supp. 139, 145 (S.D.N.Y.1971); Douglass v. Glenn E. Hinton Investments, Inc., 440 F.2d 912, 915 (9th Cir. 1971).

In Klein v. Bower, *supra*, the Second Circuit suggested that either CPLR § 213(9) (fraud) or § 214(2) (action to recover on a liability, penalty or forfeiture created or imposed by statute) were "possibly applicable" limitations periods for alleged violations of Regulation T. (*Klein*, 421 F.2d at p. 343). The only other New York provision which might apply, in addition to the two mentioned in *Klein*, is § 213(2) relating to general (non-UCC) actions on contracts.

Section 213(2) was applied in *Weinberger, supra,* where the plaintiff, a former partner of Ira Haupt & Co., a New York Stock Exchange member firm, claimed the Exchange failed adequately to supervise Haupt as required by § 6 of the 1934 Act. His claim as third-party beneficiary of a "contract" between the Exchange and the SEC was held to invoke the six year limitations period of § 213(2).

Though it may be fruitful for some purposes to think of a violation of Regulation T as a breach of contract between broker and customer, (the broker having impliedly promised his customer adherence to federal regulations) we think such a theory would seriously bruise even the concededly tough skin of traditional contracts law. If any illegality or wrong is done under Regulation T, it is solely because Regulation T *makes* it illegal or wrong. We deal with a *malum prohibitum*, not a breach of agreement.

While the question is novel and not entirely free from doubt, we hold that the applicable New York limitations statute for a claim stated under Regulation T and § 7(c) is CPLR § 214(2) relating to liabilities imposed by statute.

Margin violations were of course unknown to the common law, and the authorities indicate clearly that where a cause of action would not exist but for the presence of a statute which provides a basis for it, the suit is upon "a liability . . . created or imposed by statute" within § 214(2). Frank Shepard Co. v. Zachary P. Taylor Pub. Co., 234 N.Y. 465, 138 N.E. 409 (1927); People

v. Duggan, 30 A.D.2d 736, 291 N.Y.S.2d 582 (1968); Bevelander v. Town of Islip, 10 A.D.2d 170, 199 N.Y.S.2d 561 (1960).

In holding as we do, we recognize that in other circumstances claims of margin violations may constitute part of a § 10(b) claim under the Exchange Act, in which case the six year (fraud) limitations period (§ 213(9)) appears to apply. See Klein v. Auchincloss, Parker & Redpath, 436 F.2d 339, 341 (2d Cir. 1971); Marth v. Industrial Incomes Inc. of North America, 290 F.Supp. 755 (S. D.N.Y.1968); Maher v. J. R. Williston & Beane, Inc., 280 F.Supp. 133 (S.D.N. Y.1967); Fischman v. Raytheon Mfg. Co., *supra*; Glickman v. Schweikart & Co., 242 F.Supp. 670, 674 (S.D.N.Y. 1965); Livingston v. Weis, Voisin, Cannon, Inc., 294 F.Supp. 676 (1968); III Loss, Securities Regulation, 1774 (2d ed. 1961).

In the case at hand, however, the counterclaims, stripped of allegations of fraud, sound in tort; at most, they claim plaintiff was negligent in his handling of defendant's account. There is ample authority for the proposition that violations of § 7(c) and Regulation T give rise to an action analogous to a tort action. Moscarelli v. Stamm, 288 F. Supp. 453 (E.D.N.Y.1968); Serzysko v. Chase Manhattan Bank, 290 F.Supp. 74 (S.D.N.Y.1968), aff'd mem., 409 F.2d 1360 (2d Cir. 1969), cert. denied, 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969); Warshow v. H. Hentz & Co., 199 F.Supp. 581 (S.D.N.Y.1961); Goldenberg v. Bache & Co., 270 F.2d 675 (5th Cir. 1959); Remar v. Clayton Securities Corp., 81 F.Supp. 1014 (D.C. Mass.1949) (Wyzanski, J.). In New York law, as noted above, liabilities created by statute are governed by § 214(2), providing for a three year limitations period. Since all of the transactions which form the basis of defendant's claims occurred more than three years before the action was commenced, his claims are time-barred.

In view of this disposition of the matter, it is unnecessary to reach plaintiff's claims of laches and estoppel. The motion to dismiss is granted.

It is so ordered.